UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

HADI MATAR,

Defendant.

24-CR-59-A
**DECISION AND ORDER**

## INTRODUCTION

Following a jury trial, Defendant Hadi Matar was convicted of each charge contained in a three-count indictment. Count 1 charged Matar with attempting to provide material support to a designated foreign terrorist organization ("FTO")—that is, Hizballah, in violation of 18 U.S.C. § 2339B(a)(1). Count 2 charged Matar with committing an act of terrorism transcending national boundaries, in violation of 18 U.S.C. § 2332b(a)(1)(A). Count 3 charged Matar with providing material support to terrorists, in violation of 18 U.S.C. § 2339A. The charges against Matar stemmed from his stabbing of the author Salman Rushdie (hereinafter "Rushdie") at the Chautauqua Institution on August 12, 2022.

At the close of the Government's proof, Matar orally requested a judgment of acquittal and asked the Court to dismiss the charges against him. The Government opposed such motion, and the Court denied the motion from the bench.

After the verdicts, the Court set a deadline for the filing of post-trial motions. ECF #115.[1] Thereafter, Matar timely filed a renewed motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. ECF #121. The Government responded. ECF #123. For the reasons set forth below, Matar's motion for a judgment of acquittal is denied.

## **BACKGROUND**

Because Matar was found guilty, the Court recites the evidence "in the light most favorable to the government, with all reasonable inferences drawn in its favor." *United States v. Rowland*, 826 F.3d 100, 105 n.1 (2d Cir. 2016) (quotation marks omitted).

### **The *Fatwa*[2]**

In 1988, Salman Rushdie published the novel *The Satanic Verses*, and the work caused significant controversy because it contained what some Muslims believed to be blasphemous references to the Prophet Mohammad. Following its publication, Iran's then-Supreme Leader, Ayatollah Ruhollah Khomeini, issued the following *fatwa* (as translated into English):

> I am informing all brave Muslims of the world that the author of *The Satanic Verses*, a text written, edited, and published against Islam, the Prophet of Islam, and the Qu'ran, along with all the editors and

[1] References preceded by "ECF" are to Docket Numbers in the electronic case file (ECF). References preceded by "GEX" are to Government Exhibits received into evidence at trial.

[2] A fatwa has elsewhere been defined as "a religious opinion on Islamic law issued by an Islamic scholar" or a "religious ruling." *United States v. Stewart*, 590 F.3d 93, 101 n.3 (2d Cir. 2009)(citations omitted.

> publishers aware of its contents, are condemned to death. I call on all valiant Muslims wherever they may be in the world to kill them without delay, so that no one will dare insult the sacred beliefs of Muslims henceforth. Whoever is killed in this cause will be a martyr, God Willing. Meanwhile if someone has access to the author of the book but is incapable of carrying out the execution, he should inform the people so that [Mr. Rushdie] is punished for his actions.

GEX 162A.

In 2006 in Lebanon, then-Secretary General of Hizballah, Hassan Nasrallah delivered a speech which condemned certain cartoons of the Prophet Mohammad and endorsed Ayatollah Khomeini's prior *fatwa* against Rushdie. As translated into English, Nasrallah stated:

> If any Muslim had carried out the *fatwa* of Imam Khomeini against the apostate Salman Rushdie, those despicable people would not have dared to insult the Prophet Mohammad – not in Denmark, not in Norway, and not in France. What is this solidarity campaign all about? We are supposed to summon the ambassador, and that's it? We are supposed to boycott Danish goods, and that's it? No. I call upon the Muslim jurisprudents, the Muslim religious scholars, the leaders of the Islamic movements, the leaders of the Islamic countries, and all Muslims to take a decisive stand. If we tolerate this now, only God knows what they will do later—just like the tolerance practiced with Salman Rushdie, and the carrying out of the *fatwa*. Today, we need to take a different position regarding Denmark, if it does not take care of this matter, and regarding Norway, if it does not take care of this matter, and regarding France, if it does not take care of this matter. On this matter, we are not Lebanese, Syrians, Palestinians, Egyptians, Saudis, Malaysians, or Indonesians. This is about the Prophet of the Muslims, the Prophet of 1.4 billion Muslims. I am certain that not only millions, but hundreds of millions of Muslims, are ready and willing to sacrifice their lives in order to defend the honor of their Prophet. And you are among them.

GEX 162B.

Ayatollah Ruhollah Khomeini's successor, Ayatollah Ali Khamenei, reaffirmed the *fatwa* against Rushdie in 2017. GEX 165.

**Defendant's Conduct**

The proof presented at trial established that Matar, an American citizen living in New Jersey, became interested in the *fatwa* against Rushdie and in or about 2020 (and consistent with the *fatwa*'s directive), told another of Rushdie's general location in the Untied States. *See*, GEX 168B-2 and GEX 168C.

Thereafter, Matar began creating videos regarding the *fatwa* which were entitled "Rushdie Fatwa 1.6" and "Rushdie Fatwa 2.0" which told the story of the *fatwa* with English subtitles and concluded with Nasrallah's speech set forth above. The videos were played for the jury. Using fast-paced cuts and high-energy, dramatic music, Matar's videos bore characteristics similar to promotional or hype videos.

In 2022, Matar, utilizing the messenger service Telegraph, engaged in a series of chats with a user in Iran named Kamyar. Matar wrote to Kamyar that he "know[s] where to find rushdie" but noted that the "problem is how to do it." GEX 169A, p. 13. Matar wrote: "Like if the person does it should he follow him back home or should he do it publicly in front of the camera even though he would go to jail." *Id*. at 14. Matar asked Kamyar, "could you ask a shaykh or something. No one here would answer. But probably someone in Iran that can answer." *Id*.

Matar then advised Kaymar that Rushdie would "be here" and sent a link advertising the Chautauqua Institution program which featured Rushdie as a speaker on August 12, 2022. *Id*. Matar and Kamyar discussed whether Rushdie would have bodyguards, and Matar sought Kamyar's help in determining whether it would be permissible for him to carry fake identification. *Id*. at 9-10. Matar also repeatedly asked Kamyar for help in determining whether the *fatwa* on Rushdie remained valid and

sought Kamyar's input regarding logistical issues involved in carrying out the attack. *See, e.g.*, *id*. at 16 (Matar writing, "Please let me know when you get an answer about salman rushdie. If a person fulfill the *fatwa* and may go to jail. Is it permissible to act on the *fatwa* and is it wajib? Can a person try and go through his security even if he might fail"); *id.* a 17 ("Inshallah if you can ever find someone to ask about from salman rushdie that will be good"); *id*. at 18 ("Let me know when you find someone for our boy Salman").

On August 10, 2022, Matar traveled from New Jersey to Buffalo on a Greyhound bus, which he booked using the name "Hassan Mughniyah."[3] Matar then took a Lyft ride-share to Chautauqua.

On the morning of the attack, August 12, 2022, Matar visited a Hizballah website and took screenshots of two Hizballah martyrs who died in the month of August. GEX 163, 164, 180. At approximately 10:45AM, Rushdie took the stage at the Chautauqua Institution Amphitheater, together with a moderator named Henry Reese. After Rushdie and Reese sat down, Matar ran down the aisle towards the stage,

[3] On the day that he stabbed Rusdhie, Matar was also found to possess a fake New Jersey driver's license in the name of Hassan Mughniyah. The Government introduced evidence at trial which showed that such name is comprised of two names that are significant to Hizballah. The first name, "Hassan," is the first name of Hizballah's then-Secretary General, Hassan Nasrallah. The last name, Mughniyah, is a reference to Imad Mughniyah, the former leader of Hizballah's External Security Organization (ESO). ESO is responsible for carrying out terrorist attack on behalf of Hizballah outside of Lebanon. Imad Mughniyah was assassinated in 2008, and both Imad Mughniyah and Jihad Mughniyah are revered as Hizballah martyrs. In addition to the name, the fake license also included dates significant to Hizballah. The license's "Issue Date" was May 25, 2022, and May 25th is celebrated by Hizballah as the day of resistance in remembrance of the withdrawal of Israeli forces from Lebanon. Further, the "Date of Birth" set forth on the license was the date on which Hassan Nasrallah's son, Hadi Nasrallah, was martyred.

climbed the stairs leading to the stage, and violently attacked Rushdie by stabbing him repeatedly with a knife. Patrons at the event rushed to the stage and were able to subdue Matar. Rushdie sustained approximately 15 stab wounds causing multiple injuries to his eye, arm, neck, and liver. While he survived, Rushdie, *inter alia*, lost use of his right eye. Videotape of the assault was introduced at trial.

Following the attack, law enforcement officers in New Jersey obtained a warrant to search Matar's bedroom. Two photographs were seized from the wall above his bed. One photograph depicted the former Supreme Leader of Iran, Ruhollah Khomeini, and the then-current Supreme Leader of Iran, Ali Khamenei. The other photo depicted Hizballah suicide bomber Ahmed Kassir, who carried out a suicide bombing on November 11, 1982, against an Israeli headquarters building in Tyre, Southern Lebanon killing 80 Israelis and injuring 110. Kassir is recognized as the first Hizballah martyr.

## **DISCUSSION**

### A. Standard for Judgment of Acquittal

Rule 29 imposes a heavy burden on a defendant challenging his conviction following a jury trial. A court may enter a judgment of acquittal "only if the evidence that the defendant committed the crime alleged is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt. In applying these principles, [the Court] review[s] all of the evidence presented at trial in the light most favorable to the government, crediting every inference that the jury might have drawn in favor of the government." *United States v. Facen*, 812 F.3d 280, 286 (2d Cir. 2016)

(quotation marks and citations omitted). In other words, Rule 29 requires that the Court give significant deference to a jury's findings as to "the weight of the evidence and the reasonable inferences to be drawn" from that evidence. *Id.* (quotation marks omitted). This means not only that the Court "must credit every inference that could have been drawn in the government's favor," but that, in assessing the sufficiency of the evidence, the Court "must view the evidence as a whole." *United States v. Applins*, 637 F.3d 59, 76 (2d Cir. 2011). Ultimately, "where either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, the court must let the jury decide the matter." *Facen*, 812 F.3d at 286 (quotation marks and brackets omitted).

**B. Analysis**

**1. Count 1**

As charged in Count 1, Title 18, United States Code, Section 2339B criminalizes attempting to provide "material support or resources," including "personnel" and "services," to a designated foreign terrorist organization. Matar asserts that Count 1 should be "set aside because the Government did not prove that Defendant provided material support to Hizballah under the controlling rule announced in *United States v. Ullah*." ECF 121-1, p. 5; *see also*, *United States v. Ullah*, 173 F.4th 399 (2d Cir. 2026). According to Matar, the "controlling issue" is "whether the alleged 'personnel' and 'services' were legally provided to Hizballah at all." *Id.*[4]

[4] The jury was instructed that it could convict Matar of Count 1 if it determined that Matar attempted to provide personnel or services to Hizballah. "When the jury is properly instructed on two alternative theories of liability, as here," a court must deny a Rule 29 motion "when the evidence is sufficient under either of the theories." *United States v.*

Specifically, seizing upon the Second Circuit's recent decision in *Ullah*, Matar maintains that while he, much like Ullah, was inspired by, was ideologically aligned with, and was intent on benefitting an FTO, such evidence was "not enough" to establish that he was acting under the direction and control of (as required under the "personnel prong")—or acting in coordination with or at the direction of (as required under the "services prong")—such FTO. *See* ECF 121-1, p.6 (citing *Ullah*, 173 F.4th, at 415).

At the outset, the Court notes that Matar did not previously —and does not now—take issue with how the Court instructed the jury regarding Count 1. Indeed, this Court's instruction was based heavily on—and often quoted verbatim-—the Second Circuit's decision in *Ullah*. Considering all the evidence presented at trial, a properly-instructed jury found beyond a reasonable doubt that Matar attempted to provide himself, as "personnel," and his conduct, as a "service," to Hizballah. The Court's charge with respect to this element of Count 1 concluded: "Both the terms 'personnel' and 'service' cover only acts performed or attempted to be performed in coordination with, or at the direction of, a foreign terrorist organization."

As the discussion below makes clear, having been properly instructed on the law, the jury, considering the evidence presented at trial, reasonably determined such evidence to be sufficient to establish: (1) that Matar, in repeatedly stabbing and attempting to murder Rushdie, provided personnel and services to Hizballah; and (2)

---

*Masotto*, 73 F.3d 1233, 1241 (2d Cir. 1996). Thus, to deny Matar's motion with respect to Count 1, the Court needs only find sufficient evidence that Matar attempted to provide material support by providing either personnel or services.

that at the time he committed such acts, Matar was acting at the direction Hizballah, by attempting to fulfill the *fatwa*—which was originally issued by the Supreme Leader of Iran, Ayatollah Khomeini, and was subsequently endorsed, in 2006, by Hassan Nasrallah, then-Secretary General of Hizballah, and again, in 2017, by the Ayatollah Khomeini's successor, Ayatollah Khamenei—calling for Rushdie's murder. This Court sees no reason to disturb that conclusion.[5]

**a. Personnel Theory**

To prove that Matar attempted to provide material support to a foreign terrorist organization by providing himself as "personnel", the Government must prove that Matar "attempted . . . to work under [the] foreign terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation of that organization." 18 U.S.C. § 2339B(h). Put differently, "[i]ndividuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives shall not be considered to be working under the foreign terrorist organization's direction and control." *Id*.; *see*, *Ullah*, 173 F.4th at 415.

Here, the Court, in pertinent part, instructed the jury as follows regarding the "direction and control" element under the personnel prong:

> In order to establish that defendant intended to provide material support to Hizballah by providing "personnel," that is, himself, the government must prove beyond a reasonable doubt that defendant was

[5] At trial, the Government introduced expert testimony from Dr. Matthew Levitt, which established, *inter alia*, that Hizballah functions as a proxy organization for the Iranian government. Levitt further testified that Nasrallah's 2006 speech endorsing the Ayatollah Khomeini's *fatwa* involving Rushdie, which was broadcast over Al Manar, Hizballah's satellite television network, was a "call to action." As described previously, Matar included the videotape broadcast of Nasrallah's 2006 speech in a couple of videos that he produced prior to attacking Rushdie.

> working or attempting to work under Hizballah's direction or control. The term to work under the direction or control of Hizballah should be given its ordinary meaning. In order to establish that defendant was directed or controlled by Hizballah, the government must establish that the activities he undertook or attempted to undertake were either directed by or controlled by a foreign terrorist organization, here Hizballah. In making this determination, you should ask yourselves: did the government prove beyond a reasonable doubt that Hizballah ordered or commanded defendant to do anything under the common understanding of those terms? Or did the government prove that Hizballah provided defendant with guidance or supervision of action, conduct, or operation?
>
> Direction or control might be accomplished through a variety of means of communication, and in order to determine whether such means of communication are sufficient to establish that defendant was being directed or control by Hizballah you must examine the content of the communications.
>
> Merely being inspired by Hizballah propaganda and claiming to further Hizballah's cause through his acts does not, by itself, establish that he acted or attempted to act as Hizballah "personnel" serving under their direction or control. Instead, as I have instructed you, you must look to the content of the communications to determine whether defendant was acting or attempting to act as Hizballah "personnel" serving under their direction or control.

The Government's trial evidence reasonably established that in attacking Rushdie as he did, Matar was attempting to execute a very specific directive issued by the Ayatollah Khomeini and endorsed by Hizballah. Unlike the ISIS video watched by Ullah which "urged supporters to commit attacks against America", *see*, *Ullah*, 173 F.4th at 412, Defendant endeavored to do precisely that which was commanded by the *fatwa* and sought to kill a specific individual for a specific reason. *Cf. Ullah*, 173 F.4th at 415–16 ("The videos that [Ullah] watched that were issued by ISIS did not 'order' or 'command' him to do anything under any common understanding of those terms. Nor did they provide 'guidance or supervision of action, conduct, or

operation'—since they were silent on specifics." [citations omitted]). Indeed, to the extent that Matar himself created what may fairly be characterized as promotional videos which included Hizballah Secretary General Nasrallah's endorsement and affirmation of the very specific *fatwa* calling for Rushdie's death, a reasonable jury could find that Matar's subsequent actions in stabbing and attempting to kill Rushdie were undertaken at Nasrallah's direction and command and Matar's conduct represented his effort to fulfill such directive, command, and order.

The Court in *Ullah* also explained that to work "under" an FTO's "direction," 18 U.S.C. § 2339B(h), means that the FTO's "direction" or "control" must cause a defendant to "'suffer[] restriction, constraint, or control.'" *Ullah*, 173 F.4th at 416 (quoting Webster's Third New International Dictionary 2487 (2022)). Here, the jury could reasonably have found that the existence of Hizballah's *fatwa* against Rushdie was the only reason Matar did what he did. Indeed, at trial, the government introduced evidence that Matar rejected a suggestion put forth to him by Kaymar in Iran that consideration be given to killing another prominent American, because "Rushdie has fatwa longer" and "[The other prominent individual] doesn't have fatwa." GEX 169A, at 13. In other words, the jury could reasonably have found that Matar's behavior was, in fact, dictated, directed and controlled exclusively by the existence of the FTO-endorsed *fatwa*. Matar's own words and actions suggest that the only reason he did what he did was because he was attempting to do what he believed the Nasrallah-endorsed *fatwa* directed and commanded him to do it.

Furthermore, a rational jury could also have found that Nasrallah's speech provided "direction" because it ended by endorsing the concept of martyrdom. Dr.

Levitt explained that martyrdom is a central part of Hizballah's ability to recruit and retain its followers. And the jury was presented with overwhelming evidence establishing Matar's expectation that in fulfilling the *fatwa* he would become a Hizballah martyr. In that regard, the evidence at trial established that: (1) Matar, at the time he committed the attack, possessed a fake driver's license that contained references to several Hizballah martyrs, including Imad Mughniyah, who led Hizballah's terrorist arm for many years, *see*, GEX 3A; (2) Matar, on the morning of the attack in August, visited a website run by Hizballah and took screenshots of two martyrs who had died in the month of August, *see*, GEX 162 & 163; (3) Matar had a lockscreen on his phone which depicted another Hizballah martyr, Samir Kuntar, *see*, GEX 1E; (4) Matar had a photo of Ahmed Kassir—Hizballah's first martyr—on his bedroom wall, *see*, GEX 77AK; and (5) Matar sent his will to the Imam of his religious center several weeks before the attack, and he sent his will to another Imam two days before the attack. *See*, GEX. 174B (chat) and 174A (will).

For all of these reasons, this Court concludes that the evidence presented by the Government at trial was sufficient to allow a rational jury to find that Nasrallah's 2006 speech guided or directed Hizballah's supporters to carry out Ayatollah Khomeini's *fatwa* on Rushdie, and that Matar, in attempting to carry out that *fatwa* on Hizballah's behalf, was doing so "under" Hizballah's "direction." 18 U.S.C § 2339B(h). '[R]estrict[ed], constrain[ed], or control[ed],'" by the *fatwa*, *Ullah*, 173 F.4th at 416, Matar targeted Rushdie alone. The *fatwa* and directive Matar received, and he was acting in furtherance of, was not a "hortatory, open-ended message." *Ullah*, 173 F.4th at 416. Unlike the ISIS video the defendant watched in *Ullah*—which merely "urged"

supporters to commit unspecified attacks against America, *see*, *Ullah*, 173 F.4th at 412, the *fatwa* endorsed by Nasrallah that Matar attempted to fulfill directed that a specific person be killed for a specific reason. Such directive “constrain[ed]” Matar in the precise manner required under *Ullah*. In short, it identified the target (Salman Rushdie), the goal (Salman Rushdie’s death), and the reason (Salman Rushdie’s alleged attacks on Islam). As such, the evidence was sufficient to establish that Matar, in providing himself as personnel, was acting under the “direction and control” of Hizballah.

The Court rejects Matar’s suggestion that the evidence was insufficient because the government failed to present any evidence: that Hizballah knew of Matar or his plan before the attack; that Hizballah communicated with Matar about the attack (or that the people with whom Matar did communicate were, in fact, members of Hizballah); that Matar reported to or sought approval from Hizballah; or that Hizballah exercised any constraint over whether, where, or how Matar acted. See, ECF 121-1, ¶29. The law does not require such proof. As the Court in *Ullah* observed, “[w]e do not hold that the ‘personnel’” prong only applies to ‘foreign fighters’ who travel abroad or submit to operational command structures.” *Ullah*, 173 F.4th at 420. Further the Court acknowledged, “[w]e do not hold that the statute specifically excludes certain types of directions, or directions disseminated through certain means like YouTube….. Instead, with an eye toward their content, we merely hold that the online videos at issue here [in *Ullah*] are not ‘directions’ at all, or at least do not demonstrate that Defendant acted ‘under” ISIS's direction.’” *Ullah*, 173 F.4th at 420, n.10. Here, by contrast, Defendant attempted to do precisely that which the Hizballah-endorsed

*fatwa* directed be done, to the person against whom it was directed, for the very reason directed.

In view of all the foregoing, the Court determines that sufficient evidence was presented at trial to establish that Matar was working or attempting to work under Hizballah's direction and control.

**b. Services Theory**

To prove that a defendant attempted to provide material support to a foreign terrorist organization by providing "services," the Government must prove that Defendant engaged in "concerted activity, not independent advocacy" such that the services he provided were "performed in coordination with, or at the direction of, a foreign terrorist organization." *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23-24 (2010).

Here, the Court, in pertinent part, instructed the jury as follows regarding the "direction and control" element under the services prong:

> Additionally, and alternatively, in order to establish that defendant intended to provide material support to Hizballah by providing "service," the government must prove beyond a reasonable doubt that the service he provided or attempted to provide involved an act or acts performed in coordination with, or at the direction or control of Hizballah.
>
> As a matter of ordinary meaning, a person cannot "work or attempt to work under [Hizballah's] direction or control" if he is acting entirely independently of Hizballah. Individuals who act entirely independently of the foreign terrorist organization to advance its goals or objectives are not considered to be working or attempting to work under such foreign terrorist organization's direction or control.
>
> Rather, the government must prove that defendant acted or believed he was acting under Hizballah's direction and control.

The term "services" "refers to concerted activity, not independent advocacy," *Holder v. Humanitarian Law Project*, 561 U.S. 1, 23 (2010), and means that a "service" must be "performed in coordination with, or at the direction of, a foreign terrorist organization." *Holder*, 561 U.S. at 24. Here, as already described, the Government presented sufficient evidence at trial to demonstrate that in attempting to murder Rushdie, Matar was attempting to provide "service" to Hizballah by carrying out the directive endorsed by Hizballah's Secretary General.

**2. <u>Count 2</u>**

Matar next asserts that his conviction under Count 2 must be set aside on the ground that the Government failed to prove that the charged offense involved conduct occurring both inside and outside the United States. Specifically, Matar maintains that "[d]iscussions with people located abroad about the existence, continuing validity, or Hizballah endorsement of the fatwa do not, without evidence that those individuals participated in planning, directing, encouraging, researching, facilitating, or otherwise advancing the assault, establish that their overseas conduct formed part of the charged offense." ECF121-1, ¶50.

Title 18, United States Code, Section 2332b makes it a crime, *inter alia*, to attempt to murder or assault "any person within the United States" where the attempted murder or assault "involv[es] conduct transcending national boundaries." The statute defines "conduct transcending national boundaries" as "conduct occurring outside of the United States in addition to the conduct occurring in the United States." 18 U.S.C. § 2332b(g)(1). In its instructions to the jury, the Court stated as follows:

> The term "conduct transcending national boundaries" means conduct occurring outside the United States in addition to conduct occurring in the United States. The conduct that occurred outside the United States is not required, standing alone, to be criminal. Beyond any conduct occurring within the United States, the government must establish that the offense involved conduct outside the United States, anywhere outside the national boundaries of the United States. Such conduct can include communication of some sort, encouragement, [or] direction, but it's got to be conduct outside the United States.[6]

The First Circuit's decision in *United States v. Wright*, 937 F.3d 8 (1st Cir. 2019)—the only published Court of Appeals decision that explores the term "transcending national boundaries," 18 U.S.C. § 2332b(a)(1), involved a defendant (Wright) who had "discussions allegedly involv[ing] a 'high-profile' ISIS spokesperson and concerned a plot to fulfill a *fatwa* . . . issued by 'ISIS leaders' to behead . . . an American citizen living in [the United States] . . . for insulting the Prophet Mohammed." *Wright*, 937 F.3d at 13. Following his conviction for, *inter alia*, violating § 2332b(a)(1), Wright argued that the government had presented insufficient evidence that the conduct at issue "involv[ed] conduct transcending national boundaries." *Wright*, 937 F.3d at 32. In affirming the Wright's § 2332b(a)(1) conviction, the First Circuit affirmed the district court's jury instruction—virtually identical to the instruction given to the jury by the Court in this case—that "the conduct [occurring outside the United States] can be communication of some sort, encouragement, direction, but it's got to be conduct outside the United States." *Wright*, 937 F.3d at 35. Furthermore, the First Circuit

[6] As with Count 1, Defendant did not object to—and does not make any claim of error with respect to—the instructions to the jury regarding Count 2.

rejected Wright's argument that "conduct transcending national boundaries" must itself be criminal, *Wright*, 937 F.3d at 35, and, like this Court, so instructed the jury.

In view of the foregoing and notwithstanding Matar's claims to the contrary, the Court finds that the Government's trial evidence demonstrated that Matar's attempted to murder/assault of Rushdie included the following conduct which occurred outside the Unitd States: Hassan Nasrallah's 2006 endorsement of the Rushdie *fatwa* while in Lebanon; Ayatollah Khamenei's 2017 reaffirmation of the *fatwa* from Iran; and Matar's 2022 discussions with Iran-based Kamyar, regarding logistical issues involving his planned attack of Rushdie. Testimony at trial established that both Nasrallah's speech and Khamenei's speech occurred outside the United States, while Matar's communications with Kaymar occurred while Matar was in the United States and Kaymar was in Iran. Although Nasrallah's and Khamenei's speeches delivered outside the United States were temporally remote from Matar's attack of Rushdie, the evidence at trial established that Matar, in close temporal proximity to his attack, himself accessed the videos, reproduced them, and included them as part of videos which he produced and which the jury could reasonably have concluded were created by Matar to provide him with the direction and motivation he needed in order to commit the attack. As mentioned already, this Court determines that based upon the evidence presented at trial—including Matar's rejection of a suggestion regarding an alternative target to Rushdie on the ground that there had been no *fatwa* issued for such alternative target—it was reasonable for the jury to conclude that the foreign-issued, Hizballah-endorsed *fatwa* was the only reason Matar committed the attack that he did. *See*, <u>Analysis</u> §1(a), *above*; *see also* GEX 169A, p. 13. Additionally, during his

interactions with Kaymar and as part of his effort to plan his attack of Rushdie—specifically, whether he should follow Rushdie back home before attacking him or "do it publicly in front of the camera"—Matar asked Kaymar, "could you ask a shaykh or something. No one here [in the United States] would answer. But probably someone in Iran that can answer." GEX 169A, at 14.

This Court finds that such evidence is sufficient to sustain to permit the jury reasonably to conclude that Matar's attempted murder of Rushdie involved conduct occurring both inside and outside the United States.

**3. <u>Count 3</u>**

Finally, Matar claims that the Government's trial evidence was insufficient to establish the violation alleged in Count 3 of the Indictment, which charged him with providing material support to terrorists in violation of Title 18, United States Code, Section 2339A. Specifically, the count alleged that Matar provided material support or resources, knowing or intending that they are to be used to prepare for, or to carry out, a violation of Title 18, United States Code, Section 2332b(a)(1)(A), which prohibits acts of terrorism transcending national boundaries. Matar argues that "[t]he same evidence that fails to establish that foreign conduct formed part of the § 2332b offense [*i.e.*, Count 2] also fails to establish beyond a reasonable doubt that Defendant furnished personnel or services with knowledge or intent that they be used to prepare for or carry out that specific transnational offense." ECF 121-1, ¶61. This Court disagrees.

At the outset, the Court notes that the violations alleged in Count 1 (18 U.S.C. § 2339B) and in Count 3 (18 U.S.C. § 2339A) are both directed at punishing those

who provide "material support and resources" to terrorists. The violations alleged in each count are distinct, however, as Count 1 (alleging a violation of 18 U.S.C. § 2339B) "penalize[s] the provision of material support without regard to what the support is for," *United States v. Stewart*, 590 F.3d 93, 113 (2d Cir. 2009), while Count 3 (alleging a violation of 18 U.S.C. § 2339A) "does not" and "requires instead that the defendant provide support or resources *with the knowledge or intent* that such [support or] resources be used to commit specific violent crimes." *Stewart*, 590 F.3d at 113 (emphasis in original). "Therefore, the mental state in section 2339A [Count 3] extends both to the support itself, and to the underlying purposes for which the support is given." *Stewart*, 590 F.3d 113 n.18. Stated differently, in order to establish the required *mens rea* to convict Matar under Count 3, the government had to prove that in attempting to murder Rushdie, Matar "kn[ew] or intend[ed]" that any material support he provided would "be used in preparation for, or in carrying out, conduct that would constitute the specified § 2332b predicate, rather than a purely domestic assault." ECF 121-1, ¶ 59.

As set forth more fully in Points 1 and 2, *above*, this Court easily determines that the jury had ample evidence to support its determination that not only did Matar knowingly and intentionally attempt to provide material support to Hizballah by committing the attempted murder and assault of Rushdie as he did, but also the evidence presented reasonably demonstrated that at such support was undertaken in furtherance of Matar's effort to fulfill a highly specific, Hizballah-endorsed *fatwa* issued from outside this Nation's boundaries. As such, the evidence was sufficient to

demonstrate that Matar's knowledge and intent was to engage in an act of terrorism that "transcended national boundaries." 18 U.S.C. § 2332b(a)(1).

## CONCLUSION

For the reasons stated above, Defendant's motion for a judgment of acquittal (ECF121) is **DENIED**.

Sentencing is scheduled for November 3, 2026, at 11:30 a.m., and the filing dates with respect to sentencing submissions as previously set forth by this Court on July 30, 2026, *see*, ECF 116, shall remain in effect.

**SO ORDERED.**

Dated: Buffalo, New York. October 1, 2026.

*s/Richard J. Arcara*
HON. RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE